# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| STEVEN ORTMAN, Individually and For Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| BIO-MEDICAL APPLICATIONS OF PENNSYLVANIA, INC. and FRESENIUS MEDICAL CARE HOLDINGS, INC. d/b/a FRESENIUS MEDICAL CARE NORTH AMERICA | Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1.      Steven Ortman brings this class action to recover unpaid wages and other damages from Bio-Medical Applications of Pennsylvania, Inc. (BMA) and Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical Care North America (Fresenius) (collectively, Defendants).

2.      Fresenius and BMA employed Ortman as a Dialysis Technician in and around Middletown, Camp Hill, and Harrisburg, Pennsylvania.

3.      Like the Putative Class Members (as defined below), Ortman regularly worked more than 40 hours a workweek.

4.      But Defendants do not pay them for all the hours they worked.

5.      Instead, Defendants automatically deduct 30 minutes a workday from Ortman's and the Putative Class Members' recorded hours worked for so-called "meal breaks" (Defendant's "meal deduction policy").

6.      Ortman and the Putative Class Members are thus not paid for that time.

7. But Ortman and the Putative Class Members do not actually receive *bona fide* meal breaks.

8. Instead, Defendants require Ortman and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and Defendants continuously subject them to work-related interruptions during their unpaid "meal breaks."

9. Defendants' meal deduction policy violates the Pennsylvania Minimum Wage Act (PMWA) by depriving Ortman and the Putative Class Members of overtime wages for all hours worked in excess of 40 a workweek.

10. And Defendants' meal deduction policy violates the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Ortman and the Putative Class Members of all their earned wages (including earned overtime wages) for all hours worked.

11. Additionally, Defendants subject Ortman and the Putative Class Members to their automatic rounding practice.

12. Specifically, Defendants automatically round Ortman's and the other Putative Class Member's recorded "clock in" punches at the beginning of their shifts to the nearest quarter hour, based on 7.5-minute increments.

13. In other words, if Ortman and the Putative Class Members "clock in" at 7:52 a.m., their recorded worktime begins at 7:45 a.m.

14. But if they clock in at 7:53 a.m., their recorded worktime begins at 8:00 a.m.

15. Defendants admonish, threaten formal disciplinary action, and otherwise pressure Ortman and the Putative Class Members to not clock in more than 7.5 minutes prior to the beginning of their scheduled shifts.

16.     But Defendants require Ortman and the Putative Class Members to be suited out in required PPE – which takes approximately 5 minutes – as soon as their scheduled shift begins.

17.     Thus, Defendants' admonishments and threatened disciplinary action combined with its automatic rounding policy forces Ortman and the other Putative Class Members to suit out in required PPE each workday "off the clock" and without compensation, for Defendants' primary benefit.

18.     Defendants' uniform automatic rounding practice violates the PMWA by depriving Ortman and the Putative Class Members of overtime wages for all overtime hours worked.

19.     Likewise, Defendants' uniform automatic rounding practice violates the WPCL by depriving Ortman and the Putative Class Members of earned wages for all hours worked on their regular paydays and/or following the termination of their employment.

20.     Finally, Defendants also fail to pay Ortman and the Putative Class Members overtime at the required premium rate.

21.     Instead, Defendants pay Ortman and the Putative Class Members non-discretionary bonuses.

22.     Defendants know these bonuses and must be, but are not, included in the Putative Class Members' "regular rates" of pay for overtime purposes (Defendants' "bonus pay scheme").

23.     Defendants' bonus policy violates the PMWA by depriving Ortman and the Putative Class Members of overtime wages at the required premium rate based on all remuneration received.

24.     Likewise, Defendants' bonus policy violates the WPCL by depriving Ortman and the Putative Class Members of earned wages for all hours worked on their regular paydays and/or following the termination of their employment.

3

**JURISDICTION & VENUE**

25.     This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA).

26.     Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Ortman's Putative Class and Fresenius and/or BMA are citizens of different states (indeed, Ortman is a citizen of Pennsylvania, while Fresenius is a citizen of New York and/or Massachusetts); and (c) Ortman's Putative Class exceeds 100 members.

27.     This Court has general personal jurisdiction over Fresenius and BMA because Defendants maintain their shared principal place of business and corporate headquarters in Waltham, Massachusetts and, therefore, are "at home" in the Commonwealth of Massachusetts.

28.     Venue is proper because Defendants maintain their shared principal place of business and corporate headquarters in Waltham, Massachusetts, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

**PARTIES**

29.     Defendants employed Ortman as a Dialysis Technician at various dialysis clinics that Fresenius owns and/or operates in and around Middletown, Camp Hill, and Harrisburg, Pennsylvania from approximately January 2019 through June 2022.

30.     Specifically, throughout his employment, Fresenius required Ortman to work and be paid through BMA.

31.     Throughout his employment, Defendants classified Ortman as non-exempt and paid him on an hourly basis.

32.     Throughout his employment, Defendants subjected Ortman to their common practice of requiring him to clock out for 30 minutes a day for so-called "meal breaks."

33. But throughout his employment, Ortman did not actually receive *bona fide* meal breaks.

34. Defendants required each of these employees to clock out for 30 minutes a day for so-called "meal breaks."

35. But these employees do not actually receive *bona fide* meal breaks.

36. Instead, Defendants require these employees to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

37. Likewise, Defendants rounded Ortman's and the Putative Class Members' recorded "clock in" punches to the nearest quarter hour.

38. And Defendants admonish and threaten to discipline Ortman and the Putative Class Members if they clock in more than 7.5 minutes prior to their scheduled shift start time, thereby uniformly ensuring their recorded "clock in" punches reflect these employees' scheduled shift start time.

39. But Defendants require them to be suited out in their required PPE – which takes approximately 5 minutes – at the beginning of their scheduled shifts.

40. Defendants therefore require Ortman and the Putative Class Members to put on their required PPE "off the clock" and without compensation.

41. Thus, Defendants uniformly deprive these employees of earned wages for all hours worked and overtime wages for those hours worked over 40 in a workweek in violation of the PMWA and/or WPCL.

42. The putative class of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of Fresenius, through BMA, in or based out of, Pennsylvania[1] who were eligible for meal breaks at any time during the past 3 years ("Putative Class Members").**

43.     Fresenius is a New York corporation that maintains its headquarters in Waltham, Massachusetts.

44.     Fresenius may be served with process by serving its registered agent: **CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110**.

45.     BMA is ultimately a wholly owned subsidiary of Fresenius.

46.     BMA is a Delaware corporation that maintains its headquarters in Waltham, Massachusetts.

47.     BMA may be served with process by serving its registered agent: **CT Corporation System, 155 Federal Street, Suite 700, Boston, Massachusetts 02110**.

## FACTS

48.     Fresenius bills itself as "the world's leading provider of products and services for individuals with renal diseases."[2]

---

[1] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemtry, Inc.*, No. CV 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

[2] https://www.freseniusmedicalcare.com/en/about-us/company-profile (last visited June 11, 2024).

49.     "Through [its] network of around 4,000 dialysis clinics, [Fresenius] provide[s] dialysis treatments to more than 332,000 patients worldwide,"[3] including in Pennsylvania.

50.     Throughout the relevant period, BMA has ultimately been Fresenius's wholly owned subsidiary.

51.     To complete their shared business objective of providing dialysis services to patients across the United States (including in Pennsylvania), Fresenius hires patient care workers through BMA (including Ortman and the Putative Class Members) to work in the dialysis clinics that Fresenius owns and/or operates in the Commonwealth.

52.     Fresenius uniformly misclassifies the patient care employees who work in its Pennsylvania dialysis clinics, including Ortman and the Putative Class Members, as independent contractors.

53.     But Fresenius does not hire these patient care employees on a project-by-project basis.

54.     Rather, Fresenius hires and treats Ortman and the Putative Class Members just like regular employees.

55.     Indeed, despite uniformly misclassifying Ortman and the Putative Class Members as independent contractors, Fresenius, jointly with BMA, controls all meaningful aspects of these patient care employees' jobs.

56.     Fresenius wholly controls BMA and the patient care employees who work at Fresenius' dialysis clinics in Pennsylvania, including Ortman and the Putative Class Members.

57.     In fact, Fresenius requires Ortman and the Putative Class Members to work and be paid through BMA as a condition of their employment with Fresenius.

---

[3] *Id.*

58.     Further, Fresenius and BMA have shared common ownership and/or management.

59.     Fresenius and BMA have shared common ownership of the facilities and clinics at which Ortman and the Putative Class Members work.

60.     Fresenius and BMA maintain a shared corporate headquarters in Waltham, Massachusetts.

61.     Fresenius and BMA have a shared and/or centralized human resource department.

62.     Fresenius and BMA control Ortman's and the Putative Class Members' rates and methods of pay.

63.     Fresenius and BMA control Ortman's and the Putative Class Members' schedules and assignments.

64.     Fresenius and BMA control Ortman's and the Putative Class Members' dialysis and patient care work.

65.     Fresenius and BMA require Ortman and the Putative Class Members to follow Fresenius's and BMA's uniform policies, procedures, and protocols.

66.     Ortman's and the Putative Class Members' patient care and dialysis work must strictly adhere to the uniform quality standards put in place by Fresenius and BMA.

67.     Indeed, upon hiring, Fresenius and BMA require Ortman and the Putative Class Members to complete trainings on Fresenius's policies, procedures, and protocols to ensure their work conforms to the same.

68.     Ortman and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

69. Indeed, the daily and weekly activities of Ortman and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by Fresenius and BMA.

70. Virtually every job function is predetermined by Fresenius and BMA, including the tools and equipment used, the schedule of work, and related work duties.

71. Fresenius and BMA prohibit Ortman and the Putative Class Members from varying their job duties outside of the predetermined parameters, and Defendants require these patient care employees to follow Fresenius's and BMA's uniform policies, procedures, and directives.

72. Fresenius and BMA prohibit Ortman and Putative Class Members from straying from Defendants' uniform procedures, plans, protocols, and specifications.

73. Without the patient care and dialysis work Ortman and the Putative Class Members perform, Fresenius and BMA would not be able to complete their common business objective of providing dialysis services to patients across the United States (including in Pennsylvania).

74. Thus, Ortman's and the Putative Class Members' work is integral to, and simultaneously benefits, Defendants' shared business operations.

75. Ortman and the Putative Class Members rely on Defendants for work and compensation.

76. Ortman and the Putative Class Members do not substantially invest in the tools required to complete the overall job to which they are assigned.

77. Rather, Fresenius and/or BMA incur the large-scale business and operating expenses like marketing, payroll, clinics, dialysis/medical equipment, PPE, tools, and materials.

78.    Fresenius and BMA maintain control, oversight, and direction of Ortman and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

79.    Fresenius and BMA possess the authority to hire, fire, and discipline Ortman and the Putative Class Members.

80.    Fresenius and BMA supervise and control Ortman's and the Putative Class Members' schedules, rate and method of pay, work, and other conditions of their employment.

81.    Fresenius and BMA maintain employment records for Ortman and the Putative Class Members.

82.    In sum, Fresenius and BMA employ, jointly or otherwise, Ortman and the Putative Class Members.

83.    Defendants uniformly classify the patient care employees who work in Fresenius's Pennsylvania dialysis clinics, including Ortman and the Putative Class Members, as non-exempt and pay them on an hourly basis.

84.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

85.    For example, Defendants employed Ortman as a Dialysis Technician at dialysis clinics that Fresenius owns and/or operates in and around Middletown, Camp Hill, and Harrisburg, Pennsylvania from approximately January 2019 through June 2022.

86.    Specifically, throughout his employment, Fresenius required Ortman to work and be paid through BMA.

87.    Throughout his employment, Defendants classified Ortman as non-exempt and paid him on an hourly basis.

10

88.     Throughout his employment, Defendants subjected Ortman to their common practice of deducting 30 minutes a day for so-called "meal breaks."

89.     But throughout his employment, Ortman did not actually receive *bona fide* meal breaks.

90.     As a Dialysis Technician, Ortman's primary responsibilities included providing direct patient care to dialysis patients, preparing and sanitizing dialysis equipment, preparing materials necessary for dialysis treatment, prepping patients for dialysis, overseeing administration of dialysis treatments to patients, checking patient vitals, charting patients' treatments, responding to any emergencies, and generally assisting with dialysis and other healthcare needs.

91.     Ortman and the Putative Class Members perform their jobs under Defendants' supervision and use materials, equipment, and technology approved and supplied by Defendants.

92.     Defendants require Ortman and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

93.     At the end of each pay period, Ortman and the Putative Class Members receive wages from Defendants that are determined by common systems and methods that Defendants select and control.

94.     Defendants require Ortman and the Putative Class Members to record their "on the clock" hours worked using Defendants' timeclock system.

95.     Further, Defendants subject Ortman and the Putative Class Members to a common policy and practice of deducting 30 minutes a day for "meal breaks."

96.     Defendants automatically deduct 30 minutes a day regardless of whether Ortman and the Putative Class Members actually receive *bona fide* full, uninterrupted, 30-minute meal breaks.

11

97.    Indeed, Defendants simply assume Ortman and the Putative Class Members receive *bona fide* meal breaks each workday.

98.    But Ortman and the Putative Class Members do not actually receive *bona fide* meal breaks.

99.    Instead, Defendants require Ortman and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

100.    And Defendants continuously subject Ortman and the Putative Class Members to work interruptions during their unpaid "off the clock" "meal breaks."

101.    Because of these constant work interruptions, Ortman and the Putative Class Members are not free to engage in personal activities during their unpaid "off the clock" "meal breaks."

102.    Rather, during their "meal breaks," Ortman and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities "off the clock" and without pay.

103.    Thus, Ortman and the Putative Class Members routinely spend their unpaid "off the clock" meal breaks on duty, performing work for Defendants' benefit.

104.    This unpaid time is compensable under the PMWA because Defendants knew, or should have known, that (1) Ortman and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 20 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on Defendants'

premises or under Defendants' supervision, and/or (8) they spent their unpaid meal periods substantially performing their regular patient care duties for Defendants' shared benefit.

105.    The unpaid time is also compensable under the WPCL because Defendants agreed to pay Ortman and the Putative Class Members set rates of pay for all hours worked, and Defendants failed to pay these employees their earned wages for these on-duty "meal breaks."

106.    Defendants fail to exercise their shared duty as Ortman's and the Putative Class Members' employers to ensure these employees are not performing work that Defendants do not want performed during their unpaid "off the clock" "meal breaks."

107.    And Defendants know Ortman and the Putative Class Members routinely work "off the clock" during their unpaid "meal breaks" because Defendants expect and require these employees to do so.

108.    In fact, Ortman and the Putative Class Members repeatedly complained to Defendants' management, HR, and their supervisors about being forced to work during their unpaid "meal breaks."

109.    Despite accepting the benefits, Defendants do not pay Ortman and the Putative Class Members for the compensable work they perform during their "meal breaks."

110.    Thus, under Defendants' uniform automatic meal deduction policy, Ortman and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked over 40 hours, in violation of the PMWA.

111.    Likewise, under Defendants' uniform automatic meal deduction policy, Ortman and the Putative Class Members are deprived earned wages (including earned overtime wages) for those on-duty "meal breaks," in violation of the WPCL.

112.    Further, in addition to excluding time from these employees' wages for "meal breaks," Defendants also uniformly subject Ortman and the Putative Class Members to its automatic rounding policy.

113.    Specifically, Defendants automatically round Ortman's and the Putative Class Members' recorded time punches to the nearest quarter hour in 7.5-minute increments for Defendants' – not these employees' – shared benefit.

114.    And in conjunction with Defendants' automatic rounding policy, Defendants also prohibit Ortman and the Putative Class Members from clocking in for their shifts more than 7.5 minutes prior to their scheduled shift start times.

115.    And Defendants require Ortman and the Putative Class Members to be suited out in their required PPE (including gown, face shield, mask, and gloves) at the start of their scheduled shifts.

116.    By enforcing these policies together, Defendants ensure their automatic rounding policy *always* benefits Defendants – and never Ortman and the Putative Class Members – including by forcing them to suit out in their PPE "off the clock" and without compensation.

117.    Thus, under Defendants' uniform automatic rounding policy, Ortman and the Putative Class Members are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours in violation of the PMWA.

118.    Likewise, under Defendants' uniform automatic rounding policy, Ortman and the Putative Class Members are denied earned wages (including earned overtime wages) for all hours worked in violation of the WPCL.

119.    Further, during his employment, Defendants paid Ortman and the Putative Class Members according to its illegal bonus pay scheme.

14

120.    Specifically, Defendants paid Ortman and the Putative Class Members non-discretionary bonuses (approximately $600 a week) to encourage him to pick up extra shifts during approximately the summer of 2021.

121.    Defendants knew these bonuses were required to be, but were not, included in Ortman's and the Putative Class Members' regular rates of pay for overtime purposes.

122.    As a result, Defendants failed to pay Ortman and the Putative Class Members overtime at a rate not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for their hours worked over 40 in a week in violation of the PMWA.

123.    Likewise, Defendants failed to pay Ortman's and the Putative Class Members' earned overtime wages at the required 1.5 times their regular rates of pay—based on *all* remuneration received—for their hours worked over 40 in a week, in violation WPCL.

124.    Ortman worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

125.    Ortman typically worked 10-12 hours a workday for 5 days a workweek (50-60 hours a workweek).

126.    Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

127.    Indeed, throughout the relevant period, Ortman and the Putative Class Members typically worked 10- to 12-hours a workday and typically 5 days a workweek.

128.    And Defendants regularly require Ortman and the Putative Class Members to work "off the clock" during their unpaid meal breaks to complete their job duties and patient care responsibilities for Defendants' benefit.

129.    As a result, Ortman and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

130.    When Ortman and the Putative Class Members work more than 40 hours in a workweek, Defendants do not pay them overtime wages at rates not less than 1.5 times their regular rates for all hours worked in excess 40 in a workweek because Defendants fail to include time these employees worked "off the clock" in their total number of hours worked, in violation of the PMWA.

131.    Likewise, Defendants do not pay them all their earned wages for all hours worked because Defendants fail to include time these employees worked "off the clock" in their total number of hours worked each workweek in violation of the WPCL.

## CLASS ACTION ALLEGATIONS

132.    Ortman incorporates all other paragraphs by reference.

133.    Ortman brings his claims on behalf of himself and the Putative Class Members as a class action pursuant to FED. R. CIV. P. 23.

134.    The Putative Class Members are victimized by Defendants' meal deduction policy, which is in willful violation of Pennsylvania wage laws.

135.    Other Putative Class Members worked with Ortman and indicated they were paid in the same manner, performed similar work, and were subject to Defendants' same illegal policies.

136.    Based on his experience with Defendants, Ortman is aware Defendants' illegal pay practices were imposed on the Putative Class Members.

137.    Upon information and belief, the Putative Class includes more than 40 members.

138.    The Putative Class Members are similarly situated in all relevant respects.

139.    Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime at the required premium rate.

140.    Rather, the Putative Class is held together by Defendants' uniform meal deduction policy, which systematically deprives Ortman and the Putative Class Members of earned wages for all hours worked and overtime wages for those hours worked after 40 in a workweek.

141.    Defendants' failure to pay earned wages and overtime wages as required by Pennsylvania law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Putative Class Members.

142.    Defendants' records reflect the number of hours the Putative Class Members recorded they worked "on the clock" each week.

143.    Defendants' records also show that they automatically deducted 30 minutes a day for "meal breaks" from Putative Class Members each workday.

144.    Likewise, Defendants' records show the specific time the Putative Class Members punched in and out for the shifts.

145.    And Defendants' records also show that it automatically rounded the Putative Class Members recorded time punches to the nearest quarter hour in 7.5-minute increments.

146.    The back wages owed to Ortman and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

147.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendants' records, and there is no detraction from the common nucleus of liability facts.

148.    Therefore, the issue of damages does not preclude class treatment.

149. Ortman's experiences are therefore typical of the experiences of the Putative Class Members.

150. Ortman has no interest contrary to, or in conflict with, the Putative Class Members.

151. Like each Putative Class Member, Ortman has an interest in obtaining the unpaid wages, including overtime wages, owed under Pennsylvania law.

152. A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

153. Absent this class action, many Putative Class Members will not obtain redress for their injuries, and Defendants will reap the unjust benefits of violating Pennsylvania wage laws.

154. Further, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

155. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

156. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

157. Among the common questions of law and fact are:

    a.    Whether Defendants employed, jointly or otherwise, Ortman and the Putative Class Members;

    b.    Whether Defendants engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and/or uninterrupted, in violation of Pennsylvania wage laws;

c.     Whether Defendants knew, or had reason to know, Ortman and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid "meal breaks" in violation of Pennsylvania wage laws;

d.     Whether Defendants' automatic meal deduction policy deprived Ortman and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and/or uninterrupted in violation of Pennsylvania wage laws;

e.     Whether Defendants knew, or had reason to know, Ortman and the Putative Class Members were requested, suffered, permitted, or allowed to work during "off the clock," prior to the beginning of their scheduled shifts;

f.     Whether Defendants failed to pay Ortman and the Putative Class Members earned wages (including earned overtime wages) for all hours worked, including hours worked during missed and interrupted meal breaks, in violation of the WPCL;

g.     Whether Defendants failed to pay Ortman and the Putative Class Members overtime wages for all hours worked in excess of 40 in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the PMWA;

h.     Whether Defendants failed to pay its Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay—based on *all* remuneration received—for hours worked after 40 in a week in violation of the PMWA;

i.     Whether Defendants' failure to pay Ortman and the Putative Class Members all their earned wages and overtime wages the result of a *bona fide* dispute; and

j.      Whether Defendants' violations of Pennsylvania wage laws were willful.

158.    Ortman knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

159.    As part of their shared regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating Pennsylvania wage laws with respect to Ortman and the Putative Class Members.

160.    Defendants' illegal meal deduction policy, automatic rounding policy, and bonus policy deprived Ortman and the Putative Class Members of earned wages for all hours worked and overtime wages – based on all remuneration – for those hours worked in excess of 40 in a workweek, which they are owed under Pennsylvania law.

161.    As a result of their illegal employment policies, Defendants are liable under the PMWA and WPCL for failing to pay Ortman and the Putative Class Members earned wages for all hours worked and overtime wages – based on all remuneration – for those hours worked in excess of 40 in a workweek.

### COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA
### (CLASS ACTION)

162.    Ortman incorporates all other paragraphs by reference.

163.    Ortman brings his PMWA claims as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

164.    The conduct alleged violates the PMWA 43 PA. STAT. §§ 333.101, *et seq.*

165.    At all relevant times, Fresenius was an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

166.    At all relevant times, BMA was an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

167.    At all relevant times, Defendants employed Ortman and the Putative Class Members as covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

168.    The PMWA requires employers, like Defendants, to pay employees, like Ortman and the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for all hours worked in excess of 40 in a workweek. *See* 43 PA. STAT. § 333.104(c).

169.    Defendants violated, and are violating, the PMWA by employing Ortman and the Putative Class Members for workweeks longer than 40 hours without paying them overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration – for the hours they worked after 40 in a workweek, including those worked "off the clock." *See* 43 PA. STAT. § 333.104(c).

170.    Defendants' unlawful conduct harmed Ortman and the Putative Class Members by depriving them of the overtime wages they are owed.

171.    Accordingly, Ortman and the Putative Class Members are entitled to recover their overtime wages under the PMWA in an amount equal to 1.5 times their regular rates of pay, prejudgment interest, all available penalties, as well as attorney's fees and costs. *See* 43 PA. STAT. § 333.113.

## COUNT II

### FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL
### (CLASS ACTION)

172.    Ortman incorporates all other paragraphs by reference.

173.    Ortman brings his WPCL claims as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

174.     Defendants' conduct violates the WPCL. 43 PA. STAT. §§ 260.1, *et seq.*

175.     At all relevant times, Fresenius was an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

176.     At all relevant times, BMA was an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

177.     At all relevant times, Defendants employed Ortman and the Putative Class Members as covered "employees" within the meaning of the WPCL.

178.     The WPCL requires employers, like Defendants, to pay employees, including Ortman and the Putative Class Members, all wages (including overtime wages) due, earned, and owed to them on their regular payday(s) and following the termination of their employment. *See* 43 PA. STAT. § 260.3 and 260.5.

179.     Defendants violated, and are violating, the WPCL by depriving Ortman and the Putative Class Members of the wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. § 260.3 and 260.5.

180.     Ortman's and the Putative Class Members' earned wages have remained unpaid for more than 30 days.

181.     Defendants' failure to pay Ortman and the Putative Class Members all wages due for all the hours of work they performed was not the result of any *bona fide* dispute.

182.     Rather, Defendants knowingly failed to pay earned wages to Ortman and the Putative Class Members.

183.     Defendants' unlawful conduct harmed Ortman and the Putative Class Members by depriving them of the wages, including overtime wages, they are owed.

184.    Accordingly, Defendants owe Ortman and the Putative Class Members the difference between the wages paid and the wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

185.    Defendants also owe Ortman and the Putative Class Members liquidated damages in an amount equal to 25% of their unpaid wages. *See* 43 PA. STAT. § 260.10.

186.    Finally, Ortman and Putative Class Members are entitled to recover their reasonable attorneys' fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

### JURY DEMAND

187.    Ortman demands a trial by jury on all counts.

### RELIEF SOUGHT

WHEREFORE, Ortman, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating this lawsuit as a state-wide class action pursuant to FED. R. CIV. P. 23 on behalf of the Putative Class;

b.    An Order finding Defendants liable to Ortman and the Putative Class Members for unpaid overtime wages owed under the PMWA, plus all available penalties;

c.    An Order finding Defendants liable to Ortman and the Putative Class Members for unpaid "straight time" and overtime wages owed under the WPCL, plus liquidated damages;

d.    An Order awarding Ortman and the Putative Class Members an additional 25% penalty under the WPCL;

e.    A Judgment awarding Ortman and the Putative Class Members all unpaid wages, liquidated damages, and any other penalties available under the PMWA and WPCL;

f.    An Order awarding attorney's fees, costs, and expenses;

g.    An Order awarding pre- and post-judgment interest at the highest applicable rates; and

h.    An Order awarding such other and further relief as may be necessary and appropriate.

Dated: June 20, 2024.                          Respectfully submitted,

**GORDON LAW GROUP LLP**

By: _/s/ Philip J. Gordon_
Philip J. Gordon
Mass. BBO# 630989
Kristen M. Hurley
Mass BBO# 658237
**GORDON LAW GROUP, LLP**
585 Boylston St.
Boston, MA 02116
Telephone: (617) 536-1800
Facsimile: (617) 536-1802
pgordon@gordonllp.com
khurley@gordonllp.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone:        (713) 352-1100
Fax:          (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone:        (713) 877-8788
Fax:          (713) 877-8065
rburch@brucknerburch.com

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Tel: (361) 452-1279
Fax: (361) 452-1284
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR ORTMAN AND
THE PUTATIVE CLASS MEMBERS**